UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------ X
                          :

NICOLE LUKASEWYCH WEINER,   :

                          :

            Plaintiff,    :

                          :     **OPINION AND ORDER**

     - against -      :

                          :     **09 Civ. 7088 (SAS)**

MICHAEL J. ASTRUE,         :
Commissioner of Social Security,   :

                          :

          Defendant.   :
------------------------------------------------ X

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.   INTRODUCTION

Nicole Lukasewych Weiner ("Weiner") brings this action pursuant to the Social Security Act ("the Act"),[1] seeking judicial review of a final decision by the Commissioner of Social Security ("Commissioner") denying her claim for widow's insurance and surviving spouse benefits. Weiner contends that the Administrative Law Judge's ("ALJ") finding that she did not establish a common law marriage with the wage earner, Richard S. Weiner ("R. Weiner"), and was therefore not entitled to the requested benefits, is not supported by substantial evidence and contains errors of law. Specifically, Weiner argues that the ALJ's

--------

[1]    *See* 42 U.S.C. § 405(g).

1

determination that Weiner is not the surviving spouse of R. Weiner is not supported by substantial evidence and is in direct contradiction to the District of Columbia's laws regarding common law marriage. The Commissioner has moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the following reasons, the Commissioner's motion is denied and the ALJ's decision is reversed and benefits are hereby granted.

## II.    BACKGROUND

### A.    Procedural History

On October 14, 2004, Weiner filed an application for widow's benefits on the earnings records of R. Weiner.[2] Weiner's application was denied initially and on reconsideration.[3] Weiner requested a hearing before an ALJ which took place on November 16, 2006, where Weiner was represented by an attorney.[4] On February 28, 2007, ALJ Wallace  Tannenbaum determined that Weiner had not established that a common law marriage existed between her and R. Weiner.[5] Thus, the ALJ found Weiner ineligible for widow's insurance benefits. This

---

[2]    *See* Transcript of the Administrative Record ("Tr."), filed as part of the Commissioner's Answer pursuant to 42 U.S.C. § 405(g), at 15.

[3]    *See id.* at 71, 72-74.

[4]    *See id.* at 91, 117-128.

[5]    *See id.* at 18.

2

decision became the Commissioner's final decision after the Appeals Council denied Weiner's request for review on June 12, 2009.[6]   This action followed.

### B.   Factual Background

#### 1.   Weiner's Testimony and Evidence Submitted

Weiner filed an affidavit in New York State Surrogate's Court in January 1993.[7]   In that affidavit, Weiner stated that she and R. Weiner lived together for over twenty years "as husband and wife" in New York, until R. Weiner's death in 1992.[8]   In her affidavit, Weiner claimed that she and R. Weiner shared all household expenses and conducted their affairs together.[9]   Weiner also stated that she wore a wedding ring for over fifteen years, which she received from R. Weiner.[10]   However, they never participated in a formal marriage ceremony.[11]

In 1984, the Weiners participated in an *in vitro* fertilization ("IVF")

---

[6]      *See id*. at 4-7.

[7]      *See id.* at 36-43.

[8]      *See id.* at 36, 38, 121.

[9]      *Id*. at 36.

[10]     *See id.*

[11]     *See id.* at 125-126.

3

program at George Washington University in the District of Columbia.[12]  They continued to participate in the IVF program every year until 1991.[13]  In connection with the IVF program, the Weiners signed "Informed Consent" forms in June 1986, September 1987, and July 1989.[14]  These forms contain typed signature lines for "Wife" and "Husband."[15]  Weiner signed her name above "Wife" and R. Weiner signed his name above "Husband."[16]  Weiner stated that she and R. Weiner held themselves out as husband and wife while staying in the District of Columbia.[17]  Weiner further testified that each time the Weiners went to the District of Columbia, they stayed together in a hotel as husband and wife for a period of three to six weeks.[18]

### 2.    Evidence and Testimony from Other Individuals

The record contains letters and testimony from five people who support Weiner's claim that a common law marriage existed between her and R.

---

[12]     *See id.* at 26, 27-34, 37-38, 103-109, 121-124.

[13]     *See id.* at 121-122.

[14]     *See id.* at 27-29, 103-109.

[15]     *See id.*

[16]     *See id.* at 29, 103, 105, 106, 109.

[17]     *See id.* at 37.

[18]     *See id.* at 122, 126-127.

Weiner.  Weiner submitted a letter she received from Dr. Joseph Schulman dated December 19, 1992.[19]  In his letter, Dr. Schulman affirmed that he interviewed Weiner and R. Weiner "as a couple" for the IVF program at George Washington University.[20]  Dr. Schulman wrote that, to the best of his recollection, Weiner and R. Weiner resided at the Guest Quarters Hotel in the District of Columbia, during the approximately two to three week IVF cycle in February 1984.[21]  Dr. Schulman further stated that he never doubted that the Weiners were accepted into the program "as husband and wife."[22]

Weiner also submitted a letter dated August 9, 2003, from Raymond Samorodin, who affirmed that he was a "very close friend" of R. Weiner from 1953 until R. Weiner's death.[23]  Mr. Samorodin stated that he always considered Weiner and R. Weiner to be husband and wife, and he had no doubt that they had established a "common law marriage."[24]  In addition to writing this letter, Mr.

---

[19]     *See id.* at 26, 94.

[20]     *Id.*

[21]     *See id.*

[22]     *Id.*

[23]     *Id.* at 69.

[24]     *Id.*

Samorodin testified that when R. Weiner first introduced Weiner to him, and

consistently thereafter, he referred to Weiner as his wife.[25] Mr. Samorodin further

testified that in the early 1980s, R. Weiner requested that he pick up R. Weiner's

divorce decree from a previous marriage in Mineola, New York.[26] When Mr.

Samorodin asked R. Weiner why he wanted the divorce decree, R. Weiner

responded that he wanted to marry Weiner.[27]

   The record contains another letter dated August 9, 2005, from

Marilyn Samorodin, R. Weiner's first cousin.[28] Ms. Samorodin wrote that Weiner

lived together with R. Weiner and, since September 1970, they "were bound

together in a common law marriage as husband and wife" until R. Weiner's

death.[29]

   Weiner also submitted a notarized letter, dated November 13, 2006,

from Jean-Claude Vasseux, a close neighbor of the Weiners.[30] In his letter,

---

[25] *See id.* at 130, 133.

[26] *See id.* at 130-131.

[27] *See id.* at 131.

[28] *See id.* at 70.

[29] *Id.*

[30] *See id.* at 110.

Vasseux stated that when he first met R. Weiner, he had referred to Weiner as his wife.[31]  Vasseux affirmed that the Weiners participated in an IVF program in the District of Columbia, from 1983 through 1991, and they stayed there for five to six weeks during each visit.[32]

Diane Novatne, a business associate of Weiner testified at the hearing[33] that when she first met Weiner in the early 1980s, R. Weiner introduced her as "my wife Nicole."[34]  She also stated that she knew that Weiner and R. Weiner occasionally traveled to a fertility clinic in the District of Columbia.[35]

### C.    The ALJ's Decision and Analysis

The ALJ issued his decision on February 28, 2007, concluding that Weiner failed to show the existence of a common law marriage in the District of Columbia.[36]  The ALJ stated that  two elements must be met to establish common law marriage in the District of Columbia: (1) an express, mutual present agreement

---

[31]    *See id.*

[32]    *See id.*

[33]    *Id.* at 133-136.

[34]    *See id.* at 134-135.

[35]    *See id.* at 136.

[36]    *See id.* at 16-19.

to be husband and wife ("agreement"); and (2) good faith cohabitation following the agreement ("cohabitation").[37]  The ALJ noted that the claimant has the burden to prove these elements by a preponderance of the evidence.[38]  Regarding the first element, the ALJ simply stated: "[T]here is no doubt that claimant and the decedent lived together in New York State and held themselves out in the community as husband and wife (and may also have done so while visiting D.C.)."[39]  The ALJ concluded that Weiner failed to establish the cohabitation element because the evidence did not indicate that the Weiners had established a domicile in the District of Columbia.[40]  Rather, the ALJ found that the evidence demonstrated that the Weiners stayed in the District of Columbia "on strictly a temporary basis."[41]

Weiner filed a Request for Review of the ALJ's decision on March 8, 2007.[42]  On June 12, 2009, the Appeals Council issued its decision denying

---

[37]     *See id.* at 17.

[38]     *See id.*

[39]     *Id.*

[40]     *See id.*

[41]     *Id.* at 18.

[42]     *See id.* at 11-12.

8

review.[43]  In its decision, the Appeals Council stated that it had considered

Weiner's objections to the ALJ's decision.[44]  Nonetheless, the Appeals Concil

agreed with the ALJ that courts in the District of Columbia would not find that a

common law marriage existed as a result of the Weiners' visits to that

jurisdiction.[45]

## III.  LEGAL STANDARD

### A.  Standard of Review

In reviewing an ALJ's decision in a Social Security case, a district

court must determine whether correct legal standards were applied and whether the

ALJ's factual determinations are supported by substantial evidence. [46]

"Substantial evidence is 'more than a mere scintilla.  It means such relevant

evidence as a reasonable mind might accept as adequate to support a

conclusion.'"[47]  "To determine whether the findings are supported by substantial

---

[43]    *See id.* at 4-7.

[44]    *See id.* at 4.

[45]    *See id.* at 5.

[46]    *See Thomas v. Astrue*, No. 03 Civ. 3980, 2009 WL 4667106, at *2 (S.D.N.Y. Dec. 9, 2009).

[47]    *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  *Accord Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002).

evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn."[48] Even if there is also substantial evidence for the claimant's position, the ALJ's decision must be affirmed when substantial evidence exists to support it.[49] Moreover, the ALJ's findings of fact, as well as the inferences and conclusions drawn from those findings, are conclusive even in cases where a reviewing court's independent analysis of the evidence might differ from the ALJ's analysis.[50] Review of an ALJ's legal conclusions by a district court is de novo.[51]

A district court may affirm, reverse, or modify the Commissioner's final decision.  Remand is warranted where the ALJ has based a determination on an improper legal standard or if further development of the record is necessary to fill evidentiary gaps.[52]  The Commissioner has a duty to provide a claimant with a

---

[48]     *Snell v. Apfel*, 177 F.3d 128, 132 (2d Cir. 1999).

[49]     *See Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990) ("Where there is substantial evidence to support either position, the determination is one to be made by the factfinder.").  *See also Morillo v. Apfel*, 150 F. Supp. 2d 540, 545 (S.D.N.Y. 2001).

[50]     *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

[51]     *See Thomas*, 2009 WL 4667106, at *2.

[52]     *See Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980).

clear statement of the reasons for his decision.[53]  The ALJ has a duty to develop a

complete evidentiary record.[54]  If the ALJ's rationale could be rendered more

intelligible through further findings or a more complete explanation, remand is

appropriate.[55]  The reviewing court must keep in mind that "[t]he Act must be

liberally applied, for it is a remedial statute intended to include, not exclude."[56]

## IV.   APPLICABLE LAW

### A.   Widow's Insurance Benefits

An surviving spouse is entitled to widow's insurance benefits if she

establishes the following elements: (1) she is a "widow" of a fully insured

individual; (2) she is not married; (3) she has attained age 60, or has attained age

50 and is disabled; (4) she has filed an application for widow's insurance benefits;

and (5) she is not entitled to old-age insurance benefits, or is entitled to old-age

insurance benefits which are less than the deceased individual's primary insurance

---

[53]   *See, e.g.*, *Treadwell v. Schweiker*, 698 F.2d 137, 142 (2d Cir. 1983)
("[I]t is an elementary rule that the propriety of agency action must be evaluated
on the basis of stated reason.").

[54]   *See Colon v. Apfel*, 133 F. Supp. 2d 330, 343 (S.D.N.Y. 2001).

[55]   *See Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996).

[56]   *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990).

amount.[57]

According to the Act, an applicant for widow's insurance benefits is considered the widow of an insured decedent if the state in which the decedent was domiciled when he died would recognize that the applicant and the decedent were validly married at the time of the decedent's death.[58]  If state law would not consider them to be validly married at the time of the decedent's death, the applicant would still be considered the widow of the decedent if, under the laws applied by that state when determining the devolution of intestate personal property, the applicant would have the status of a widow with respect to the taking of the decedent's property.[59]

Thus, the validity of the marriage is determined by the laws of the state where the decedent was domiciled when he died.[60]  Because R. Weiner lived

---

[57]     *See* 42 U.S.C. § 402(e)(1); 20 C.F.R. § 404.335.

[58]     *See* 42 U.S.C. § 416(h)(1)(A) ("An applicant is the . . . widow . . . of a[n] insured individual . . . if such insured individual is dead, [and] the Courts of the State in which he was domiciled at the time of death . . . would find that such applicant and such insured individual were validly married . . . at the time [such insured individual] died."); *see also* 20 C.F.R. § 404.345.

[59]     *See* 42 U.S.C. § 416(h)(1)(A); 20 C.F.R. § 404.345.

[60]     *See id*.

12

in New York when he died,[61] the marriage laws of New York State govern.

## B.   Marriage in New York State

Although a common law marriage cannot be formed within New York, the state will recognize valid common law marriages from other jurisdictions, "unless barred by positive law (statute or natural law (incest, polygamy)) or where the marriage is otherwise offensive to public policy."[62]  In making this determination, New York will apply the common law marriage requirements of the other jurisdiction.[63]  Weiner has conceded that no marriage ceremony occurred between her and R. Weiner in New York.[64]

## C.   Common Law Marriage in the District of Columbia

The District of Columbia has legally recognized common law marriage since 1931.[65]  Because ceremonial marriage is an available alternative which provides absolute proof of marriage, claims of common law marriage

---

[61]   *See* Tr. at 38, 121.

[62]   *B.S. v. F.B.*, 883 N.Y.S.2d 458, 466 (Sup. Ct. Westchester Co. 2009) (citing *Mott v. Duncan Petroleum Trans.*, 51 N.Y.2d 289, 292 (1980)).

[63]   *See Mott*, 51 N.Y.2d at 292.

[64]   *See* Tr. at 125, 126.

[65]   *See Hoage v. Murch Bros. Constr. Co.*, 50 F.2d 983, 985 (D.C. Cir. 1931); *Coleman v. United States*, 948 A.2d 534, 544 (D.C. 2008).

13

should be "closely scrutinized," especially where one purported spouse is deceased and the survivor asserts the claim "to promote his [or her] financial interest."[66] The claimant has the burden of proving, by a preponderance of the evidence, the elements of a common law marriage.[67]

To establish a common law marriage in the District of Columbia, two elements must be established: (1) there must be an express, mutual, and present agreement to be husband and wife, which must be in words of the present tense, and (2) the husband and wife must cohabit following the agreement.[68] A claimant may provide direct evidence of common law marriage (such as testimony by the purported spouses, or deeds to property or tax returns), or circumstantial evidence (such as testimony by friends and relatives regarding the claimant's relationship with the purported spouse).[69] However, an inference derived from circumstantial

---

[66] *Coates v. Watts*, 622 A.2d 25, 27 (D.C. 2005).

[67] *See id.*; *see also East v. East*, 536 A.2d 1103, 1106 (D.C. 1993).

[68] *See Coleman*, 948 A.2d at 544; *Mesa v. United States*, 875 A.2d 79, 83 (D.C. 2005).

[69] *See Mesa*, 875 A.2d at 83 (citations omitted).

14

evidence may be rebutted by direct evidence that there was no present agreement.[70]

With regard to the first requirement, an agreement to marry at a future point in time is not sufficient.[71]  It is sufficient, however, if a purported spouse stated his or her marital status in public.[72]  Importantly, both federal and state courts in the District of Columbia have held that evidence of cohabitation and a general reputation as a married couple is not enough to infer the existence of a mutual agreement – proof of an express agreement is necessary.[73]

District of Columbia case law is unclear as to whether the agreement element of common law marriage can be satisfied when the agreement was entered into outside the District.  Some New York state courts suggest that the agreement

---

[70]     *See id.* (citing *Marcus v. Director, Office of Workers' Comp. Programs, U.S. Dep't of Labor*, 548 F.2d 1044, 1048 n.9 (D.C. Cir. 1976)).

[71]     *See Mesa*, 875 A.2d at 84.

[72]     *See East*, 536 A.2d at 1106 (finding that a present verbal agreement was established when one spouse announced in public that the couple was married "from here on in").

[73]     *See, e.g.*, *U.S. Fid. & Guar. Co. v. Britton*, 269 F.2d 249, 252 (D.C. Cir. 1959) ("[C]ohabitation and general reputation . . . might . . . be sufficient to warrant an inference of marriage by consent.  But, when one . . . asserts its existence but either denies or fails to say there was mutual . . . agreement, then mere cohabitation, even though followed by reputation, will not justify an inference of mutual . . . agreement."); *Coates*, 622 A.2d at 27.

must be executed in the District of Columbia.[74] Other courts, including the

Supreme Court, have held that an agreement made outside of a state recognizing

common law marriage may satisfy the agreement element of common law

marriage.[75]

Furthermore, with regard to the second requirement, District of

Columbia cases do not specify a minimum period of cohabitation within the

District. However, New York cases provide some guidance on this issue. In

---

[74]    *See, e.g., Sears v. Sears*, 700 N.Y.S.2d 626, 628 (4th Dep't 1999)
(concluding that plaintiff did not establish a common law marriage in the District
of Columbia, as plaintiff and purported spouse never entered into a present
agreement to be husband and wife while in the District); *Cross v. Cross*, 541
N.Y.S.2d 202, 206 (1st Dep't 1989) (stating that the agreement element was not
established because plaintiff did not produce "a scintilla of evidence" that she and
her purported spouse had entered into a present agreement while they were in the
District of Columbia).

[75]    *See Travers v. Reinhardt*, 205 U.S. 423, 437-39 (1907) (holding that
when a couple who considered themselves to be married in a state not recognizing
common law marriage came into a state which sanctioned common law marriage, a
valid common law marriage was established); *National Union Fire Ins. Co. v.
Britton*, 187 F. Supp. 359, 364 (D.D.C. 1960) (concluding that a valid common
law marriage existed where a couple made a previous agreement in Virginia, a
state that does not recognize common law marriage, and moved to the District of
Columbia and continued their relationship there pursuant to their previous
agreement). *But see U.S. Fid. & Guar. Co.*, 269 F.2d at 253 ("Cohabitation which
was meretricious in its inception is considered to have the same character . . . after
the removal of a[n] . . . impediment. Cohabitation continued thereafter could not
ripen into a common-law marriage unless it was pursuant to a mutual . . .
agreement . . . made after the removal of . . . a barrier.").

16

*Cross v. Cross*, New York's Appellate Division, First Department, concluded that

a weekend spent in the District of Columbia was not enough to establish the

cohabitation element.[76]  However, in *Renshaw v. Heckler*, the Second Circuit

concluded that plaintiff established the cohabitation element in Pennsylvania when

she and her husband spent the night there on eight different occasions.[77]  The

*Renshaw* court emphasized that the couple had a long relationship and all of their

relatives and friends assumed they were married.[78]

## III.   DISCUSSION

### A.   The Parties' Contentions

Weiner argues that the ALJ's determination that Weiner is not the

surviving spouse of R. Weiner is not supported by substantial evidence and is in

direct contradiction to the District of Columbia's laws regarding common law

---

[76]   541 N.Y.S.2d at 206. *But see Ventura v. Ventura*, 280 N.Y.S.2d 5, 12 (Sup. Ct. Queens Co. 1967) (stating that a three day weekend trip to Georgia was enough to establish cohabitation in Georgia, as Georgia law prescribes no particular period of cohabitation).

[77]   787 F.2d 50, 51-53 (2d Cir. 1986). While Pennsylvania law regarding common law marriage is different from that of the District of Columbia in that it requires *either* evidence of a present agreement to be married *or* reputation and cohabitation, the court's reasoning is applicable because it focused on the period of cohabitation. *See id.* at 52.

[78]   *See id.* at 53.

17

marriage.  Weiner contends that she has established a common law marriage in the District of Columbia.  Weiner claims to have met her burden of proving that she and R. Weiner had entered into an express agreement to be husband and wife in the District of Columbia.  Specifically, Weiner stated that she and R. Weiner held themselves out as husband and wife on many occasions when in the District for the IVF program.[79]  As evidence, Weiner produced informed consent forms which she and R. Weiner signed to participate in the IVF program.[80]  Weiner claims to have met the cohabitation element as well, arguing that there is no requirement for an on-going presence in the District of Columbia.  According to Weiner, therefore, the time that she and R. Weiner spent in the District satisfies the cohabitation element.

The Commissioner argues that the ALJ properly concluded that Weiner failed to establish a valid common law marriage in the District of Columbia.  The ALJ did not determine whether Weiner established the first element, the existence of a present agreement, but conceded that the Weiners held themselves out to be husband and wife in New York, and may have done so in the

---

[79]   *See* Tr. at 37.

[80]   *See id.* at 36-43, 120-128.

18

District of Columbia.[81]  However, the Commissioner contends that Weiner has not met the burden of proving an express, mutual, and present agreement to be husband and wife, as Weiner never alleged that she and R. Weiner entered into an express agreement while they were in the District or in any other jurisdiction.[82] The Commissioner further claims that Weiner did not provide evidence that she and R. Weiner cohabited in the District *following* such agreement.[83]

### B.    Express, Mutual, and Present Agreement

A review of the record before the ALJ reveals that Weiner has established the present agreement element based on the Informed Consent forms she and R. Weiner executed as husband and wife in order to participate in the IVF program in the District of Columbia.[84]  These forms were signed in the District of Columbia.  Furthermore, Dr. Schulman, who interviewed Weiner and R. Weiner for the IVF program, affirmed that he interviewed them "as a couple."[85]  Dr. Schulman stated that he never doubted that Weiner and R. Weiner were accepted

---

[81]    *See id.* at 17.

[82]    *See* Memorandum of Law in Support of Defendant's Motion for Judgment on the Pleadings ("Def. Mem.") at 9.

[83]    *See id.* at 12.

[84]    *See* Tr. at 27-29, 103-109.

[85]    *Id.* at 26, 94.

into the program "as husband and wife."[86]  Weiner and R. Weiner were trying to

conceive a child in the District every year from 1984 until 1991.[87]  Weiner testified

that she and R. Weiner held themselves out as husband and wife while staying in

the District of Columbia.[88]  Weiner further testified that each time she and R.

Weiner went to the District of Columbia, they stayed together in a hotel as

husband and wife for three to six weeks.[89]

      In addition, Weiner satisfied the agreement element in New York.

The Weiners lived together for over twenty years in New York,[90] and she provided

abundant evidence that they held themselves out to their relatives and friends as

husband and wife.[91]  A valid common law marriage exists where a couple makes

an agreement in a state that does not recognize common law marriage and

subsequently cohabits in a state that does, such as the District of Columbia.[92]

---

[86]    *Id.*

[87]    *See id.* at 26, 27-34, 37-38, 103-109, 121-124.

[88]    *See id.* at 37.

[89]    *See id.* at 122, 126-127.

[90]    *See id.* at 36, 38, 121.

[91]    *See supra* notes 20-36 and accompanying text.

[92]    *See Travers*, 205 U.S. at 437-39; *Britton*, 187 F. Supp. at 364.

Indeed, the ALJ noted that "there is no doubt that claimant and the decedent lived together in New York State and held themselves out in the community as husband and wife (and may also have done so while visiting D.C.)."[93]

### C.    Cohabitation Pursuant to an Agreement

The evidence in the record clearly established that the Weiners cohabited in the District of Columbia.  Furthermore, the ALJ applied an erroneous legal standard in his determination of the cohabitation element of common law marriage.

Weiner must establish that she and R. Weiner cohabited together after entering into an express, mutual, and present agreement to be husband and wife.[94] District of Columbia case law does not specify how long a couple must reside in the District before they are considered to be cohabiting in the District.  New York case law is also uncertain on this issue.[95]  Here, the Weiners lived in the District for three to six weeks every year for eight years to participate in the IVF program.[96]  This evidence conclusively establishes cohabitation.

---

[93]    Tr. at 17.

[94]    *See Coleman*, 948 A.2d at 544; *Mesa*, 875 A.2d at 83.

[95]    *See supra* notes 77-79 and accompanying text.

[96]    *See* Tr. at 122, 126-127.

21

While the case law does not establish a minimum period of cohabitation, no case law in the District of Columbia states that one must establish *domicile* in the District in order to establish cohabitation within the District. Therefore, the ALJ applied the wrong legal standard when he concluded that, because Weiner did not provide evidence of *domicile* within the District, she failed to establish the cohabitation element.[97]

## V.    CONCLUSION

After carefully examining the ALJ's decision and the administrative record, I conclude that the Commissioner's determination must be reversed and the case  remanded solely for the calculation of benefits.  The Commissioner's motion is denied.  The Clerk of the Court is directed to close this motion (Docket no. 9) and this case.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
              February 25, 2010

---

[97]      *See id.* at 17-18.

22

## -Appearances-

**Counsel for Plaintiff:**

Thomas P. Hartnett, Esq.
110 Wall Street, 11th Floor
New York, NY 10019
(917) 853-7674

**Counsel for Defendant:**

Susan C. Branagan
Assistant United States Attorney
86 Chambers Street, 3rd Floor
New York, NY 10007
(212) 637-2804